IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wallake Power System, LLC,

    Plaintiff,

v.

Engine Distributors, Inc. and Jerry Kosner,

    Defendants.

Case No: 2:18-cv-423

Judge Graham

Magistrate Judge Deavers

Order

    Defendants have filed a motion in limine to limit plaintiff from presenting evidence of lost profits allegedly caused by defendants' defamatory statements. Defendants in particular seek to exclude expert witness Glenn Sheets and lay witness Neil Hauff from testifying about parts sales which Graham Ford would have made but for defendants' conduct. Defendants argue that the scope of the new trial on damages should be limited to consideration of the reputational injury caused to Graham Ford's parts business by defendants' defamatory statements, and not include consideration of the lost profits suffered by the parts business.

    The reputational injury aspect of plaintiff's case certainly was the primary focus as the Court considered the parties' briefing on defendants' motion for a new trial on damages and as the Court reopened discovery. But the Court did not expressly narrow the scope of the new trial or limit discovery to reputational injury only. Rather the limit imposed was that the plaintiff was to confine its case to the damages caused to Graham's parts business.

    In granting defendants' motion for a new trial, the Court found that plaintiff's counsel's references in closing argument to purported damages to Graham's parts business was irrelevant in light of the presentation of the evidence, which focused on Graham's plans for its assembled, industrial engines business. The Court stated in its Opinion and Order: "The motion is granted . . . under Rule 59 for a new trial on the issues of compensatory and punitive damages, and the jury's verdicts as to damages are hereby set aside." Doc. 112 at p. 13.

    The Court then conducted a telephone conference with the parties concerning the scope of the case and discovery going forward. The Court stated: "I think that it would be good for counsel to just look at this case like it's a brand new case and regarding the damage to the parts side of the

1

business and start out with interrogatories and requests for production of documents and so forth and then following up with depositions." Doc. 117 at pages 6-7.

The Court then issued an Order concerning discovery that stated as follows: "Pursuant to the status conference held on March 26, 2020, discovery in this matter is reopened on the issue of the harm caused by defendants' defamatory conduct to plaintiff's parts business." Doc. 115 at p. 1. The parties exchanged discovery requests that included interrogatories and document production requests relating to lost profits. *See* doc. 148-1 at pages 6, 12.

Though a new trial was granted a year-and-a-half ago, defendants waited until the eve of trial to raise this issue. Defendants did not, during the course of discovery or at the final pretrial conference, raise any concern or objection to the scope of the new trial. Graham Ford produced to defendants a report from its damages expert, Mr. Sheets, in October 2020 in which plaintiff plainly indicated that it intended to seek an award of lost profits suffered by its parts business at the new trial. Graham repeated its position in its final pretrial statement in September 2021.

Defendants further argue that if the defamation claim is the only claim which has survived (and not the tortious interference and Ohio Deceptive Trade Practices Act claims), then lost profits are not available. This argument is contrary to well-established law, under which a jury considering a defamation claim may award lost business income or profits caused by the defamatory conduct. *See Armstrong v. Shirvell*, 596 Fed. App'x 433, 448 (6th Cir. 2015) (award may include "any economic benefits for tangible losses—such as losses in wages or profits—flowing from the harm to his reputation"); *Martin v. Wegman*, 1st Dist. Hamilton No. C-180268, 2019-Ohio-2935, ¶ 15 ("Special damages are those direct financial losses resulting from the plaintiff's impaired reputation, such as lost profits to his business.").

Defendants further contend in their trial brief that there could not have been any lost profits suffered by the parts business because Mr. Wallake emailed a business associate a year before Ford Component Sales terminated the Powertrain Sales Agreement that he intended to "get out of the parts business." *See* Trial Exhibit G. The Court finds that Mr. Wallake's statement does not establish as a matter of law that Graham suffered no lost profits to its parts business. Rather, Mr. Wallake's statement of intent as to what he planned to do with his parts business is one piece of evidence the jury must consider as it determines the extent of the damages caused by defendants' conduct.

The Court finds that the scope of the new trial on damages should include not only the reputational harm but also the lost profits proximately caused by defendants' conduct to Graham's parts business. The liability stage of the first trial established that defendant's conduct caused FCS to

terminate the Powertrain Sales Agreement. One of the elements of Graham's claim for tortious interference with a business relationship was that defendants intentionally interfered with Graham Ford's business relationship with FCS. Another element was that Graham was injured as a proximate result of defendants' actions. According to Mr. Wallake's testimony, and as argued to the jury by plaintiff's counsel, Graham suffered injury because defendants' defamatory statements caused FCS to terminate the Powertrain Sales Agreement.

Accordingly, defendants' motion in limine (doc. 146) is DENIED, and at the second trial Graham may pursue damages for reputational injury and lost profits proximately caused by FCS terminating the Powertrain Sales Agreement.

                                                          s/ James L. Graham
                                                          JAMES L. GRAHAM
                                                          United States District Judge

DATE: October 12, 2021