IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wallake Power System, LLC,                                    Case No: 2:18-cv-423

              Plaintiff,                              Judge Graham

     v.                                              Magistrate Judge Deavers

Engine Distributors, Inc. and Jerry Kosner,

              Defendants.

<u>Opinion and Order</u>

This matter is before the Court on two post-judgment motions filed by plaintiff, the prevailing party at trial. The first motion is for an award of costs and post-judgment interest, and the second is for an award of attorneys' fees. Defendants have not opposed either motion, despite being granted an extension of time to do so.

## I.     Background

The history of this case has been described in great detail in other orders of the Court. *See*, *e.g.*, Docs. 46, 112, 171. In brief, this case has twice gone to trial. In the first trial, which lasted six days in December 2019, the jury returned a verdict in plaintiff's favor on liability, finding that defendants made false and defamatory statements about plaintiff's business and that those statements caused Ford Component Sales (FCS) to terminate the Powertrain Sales Agreement it had entered into with plaintiff.

The jury in the first trial awarded plaintiff $150,000 in compensatory damages and $1 million in punitive damages. However, the Court found that certain statements made by plaintiff's counsel during closing argument had prejudiced the jury, and the Court granted defendants' motion for a new trial on damages.

A second trial on damages was held in October 2021, and it lasted three days. The jury awarded plaintiff $826,822 in lost profits, $173,178 for reputational harm, and $200,000 in punitive damages. The jury further found under Ohio law that plaintiff is entitled to an award of attorneys' fees in an amount to be determined by the Court. *See* O.R.C. § 2315.21(D)(2)(c).

Following the second trial, defendants moved for judgment as a matter of law or for a new trial. *See* Fed. R. Civ. P. 50(b). The Court denied defendants' motion. *See* Doc. 171.

## II. Motion for Costs and Post-Judgment Interest

### A. Costs

Plaintiff seeks an award of costs in the amount of $12,329.52. *See* Fed. R. Civ. P. 54(d)(1). The costs include the fees for the filing of the case, deposition transcripts and trial transcripts. Defendants have not challenged the inclusion of these fees as allowable costs, nor have they challenged the reasonableness of the amounts sought.

There were eight transcripts, and they were used at the summary judgment stage, at trial and during post-trial motions practice. The Court finds that the transcripts were "necessarily obtained for use in the case" and that the fees are reasonable. *See* 28 U.S.C. § 1920(2).

Accordingly, plaintiff is awarded $12,329.52 in costs.

### B. Post-Judgment Interest

An award of post-judgment interest is mandated under 28 U.S.C. § 1961(a). "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (internal quotation marks omitted).

Defendants do not contest an award of post-judgment interest. Yet the Court notes a legal issue which should be briefly addressed. Plaintiff believes that interest should be calculated on not only the $1.2 million damages award but also the attorneys' fees award because plaintiff's entitlement to attorneys' fees was part of the jury's verdict and the Clerk's Judgment. *See* Docs. 157, 161.

The Court agrees with plaintiff's position. Under 28 U.S.C § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Plaintiff's entitlement to an award of attorney's fees was made a part of the Judgment. *See* Doc. 161. Under Ohio tort law, "[i]f punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Columbus Fin., Inc. v. Howard*, 42 Ohio St. 2d 178, 183, 327 N.E.2d 654, 658 (1975). Attorneys' fees in this context are "awarded as an element of compensatory damages where the jury finds that punitive damages are warranted." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558, 644 N.E.2d 397, 402 (1994); *see also Peckham Iron Co. v. Harper*, 41 Ohio St. 100, 109 (1884) (holding that in a fraud case "exemplary damages may be allowed; and in such a case, the jury, in estimating the damages, may include the plaintiff's reasonable counsel fees as an item of compensation"); *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326 (6th Cir. 2022) (observing that under Ohio law, an attorneys' fees award serves "to compensate the tort victim").

2

The Sixth Circuit has held that the calculation of post-judgment interest should include attorneys' fees where the judgment includes an award of attorneys' fees. *See Associated General Contractors v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) ("We believe that the language of § 1961(a) permits the interest to run on a fee award from the time of entry of the judgment which unconditionally entitles the prevailing party to reasonable attorney fees."). This is true even if the fees are not quantified until a later time. *Id.* ("We see no reason to follow those few cases that read into the term 'money judgment' the requirement that an award of attorney fees be quantified prior to accruing interest.").

Accordingly, plaintiff is awarded post-judgment interest in an amount to be calculated by the Clerk of Court in accordance with the provisions of 28 U.S.C. § 1961. Because the Judgment included an award of attorneys' fees, the Clerk shall calculate interest based on the sum of the $1,200,000 damages award and the attorneys' fees award, which, as detailed below, the Court sets at $302,558.25 – for a total of $1,502,558.25.

## III. Amount of the Attorneys' Fees Award

### A. Overview of Fee Award Sought by Plaintiff

Four attorneys from the Cleveland office of the firm of Benesch Friedlander Coplan & Aronoff LLP worked on this litigation.

Lead counsel was David Krueger. At the time this case was filed in 2018, Mr. Krueger was a partner at his firm, had 8 years of experience and billed at a rate of $325 per hour. As of the time of the filing of the attorneys' fee motion in April 2022, Mr. Krueger had 12 years of experience and was billing at a rate of $510 per hour.

Associate Nora Cook had 7 years of experience at the start of this case and billed at an hourly rate of $325. Ms. Cook had 11 years of experience and billed at a rate of $405 per hour at the end of this litigation.

Junior associate John Dagon had 1 year of experience when he began working on this case in November 2019. He billed at an hourly rate of $290. At the end of this case, Mr. Dagon had 3 years of experience and billed $315 per hour.

Junior associate James Walsh, who had under 1 year of experience, briefly worked on the case before it was filed. He billed $325 per hour.

Plaintiff seeks approval of the following rates, hours and fees:

| Attorney | Average Rate Billed | Hours | Requested Fee |
|---|---|---|---|
| David Krueger | $435 | 795.3 | $345,955.50 |
| Nora Cook | $355 | 428.3 | $152,046.50 |
| John Dagon | $299 | 444.6 | $132,935.40 |
| James Walsh | $325 | 8.5 | $2,762.50 |
| **TOTAL** | | 1,676.7 | $633,699.90 |

### B.    The Lodestar Method

The court determines an award of attorneys' fees by using the lodestar method, under which a reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870, 879–80 (S.D. Ohio 2008) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *accord Phoenix Lighting Grp., L.L.C. v. Genlyte Thomas Grp., L.L.C.*, 160 Ohio St. 3d 32, 35, 153 N.E.3d 30, 35 (2020) (Ohio courts follow federal courts in using the lodestar method).

Because of its objectivity, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The reasonable hourly rate should be determined according to "the 'prevailing market rate[s] in the relevant community.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The reasonable number of hours will not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The lodestar method is designed to attract competent counsel to vindicate a party's rights but is not designed to serve as a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

### C.    Reasonable Number of Hours

#### 1.    Accounting for the Second Trial on Damages

The Court's analysis typically begins with a determination of a reasonable hourly rate. However, the Court finds it to be more useful to first address an issue which, if resolved against plaintiff, would have the effect of substantially reducing the number of hours allowed. The issue is whether to exclude hours because a new trial on damages was made necessary by the fault of plaintiff's counsel. Counsel expended a significant number of hours (512.4) from the end of the first trial through the completion of the second, and those hours were billed at higher rates than during the first half of the litigation.

4

### a.      Summary of Why a New Trial on Damages was Held

Before the completion of the second trial, the Court expressed concern with potentially awarding a fee amount which included fees for the "retrial of the issue of damages" because the retrial was "a result of something that was the fault of the plaintiff."  Doc. 164 at PAGEID 3738. The "fault" of plaintiff referred to prejudicial statements made by plaintiff's counsel during closing argument of the damages stage of the first trial.  In particular, counsel referred to alleged reputational harm suffered by a portion of plaintiff's business (the so-called "parts" business) which plaintiff had not demonstrated was affected by defendants' defamatory statements.  Doc. 112 at PAGEID 3018–3019.  The Court, upon finding that it was reasonably probable that counsel's improper statements influenced the jury's determination of damages, granted defendants' motion for a new trial on damages.  *Id.* at PAGEID 3022.

In its motion for attorneys' fees, plaintiff argues that the fee award should not be reduced on account of the second trial.  Plaintiff points to the Court's recognition in the second trial that the distinction between "parts" and "engines" was not warranted:

> I can't see in the agreement, the FCS agreement, any distinction between parts and engines. . . . And so if the Court has confused things by earlier referring to parts, thinking that there was some distinction under the contract, then that's my fault, but it's not the plaintiff's fault.

Doc. 162 at PAGEID 3441.  Thus, in respectful fashion, plaintiff suggests that the "fault" which led to the need for a second trial belonged to the Court and not plaintiff's counsel.

The Court acknowledges that it created confusion heading into the second trial by adopting a dichotomy between "parts" and "engines" in its order granting a new trial on damages.  But the Court's imperfect labels is not what caused the likelihood of prejudice at trial in the first trial.

Plaintiff claimed that defendants' defamatory statements caused FCS to stop selling "engines and transmissions" to plaintiff under the parties' Powertrain Sales Agreement.  Doc. 53 at § IV.A.1 (Joint Final Pretrial Order in which plaintiff described the nature of its claims).  And the jury agreed. Plaintiff's theory of damages at the first trial was that its inability to purchase engines and transmissions from FCS prevented plaintiff from receiving the return on investment it planned to realize in new business ventures.  The ventures involved plaintiff purchasing incomplete powertrains, assembling and calibrating them, obtaining EPA emissions certifications, and then selling them in turnkey condition to end users.  *See id.* at § IV.B.4 (plaintiff would purchase incomplete powertrain assemblies and would then, as the manufacturer of record, sell the completed assemblies to end users); Doc. 48-2 at PAGEID 980–981 (Feb. 1, 2019 report of plaintiff's damages

expert, stating that plaintiff's business plans represented "new opportunities"); Pl.'s Trial Ex. 20 (from the Dec. 2019 trial – plaintiff's proposed business plan as presented to FCS in July 2014). The primary planned venture was to sell wellhead gas engines to customers in the oil and gas production sector. *See* Pl.'s Tr. Ex. 18 (from the Dec. 2019 trial – showing plaintiff's business objectives and expected annual sales once EPA certification was obtained and engine production was at capacity).

In the parties' joint final pretrial statement for the first trial, plaintiff stated that it intended to seek actual damages of $3,969,234. *See* Doc. 53 at § IV.A.1. This number matched exactly the amount which plaintiff's damages expert, Glenn Sheets, had calculated to be the present value of the return on investment and the earnings which plaintiff could have expected from future business ventures. *See* Doc. 48-2 at PAGEID 982–89. During opening argument in the damages stage of the first trial, plaintiff sought a more conservative amount of $2.6 million in actual damages. But still, plaintiff calculated that amount based on what plaintiff "could have reasonably expected to obtain as a return on his investment" in the wellhead gas engine venture. Doc. 108 at PAGEID 2889–2890 (calling the wellhead gas engine a "great opportunity" which would be a "first-of-its-kind product").

After a *Daubert* hearing, the Court excluded Mr. Sheets from providing expert testimony in the first trial because his opinions lacked a foundation in the factual record and his methodology did not reliably fit the case. *See* Doc. 92. This left the testimony of Chris Wallake, the president and owner of plaintiff, as evidence for the jury to consider. During the damages stage, Mr. Wallake testified to the amount of money he invested in research and development for the new ventures and to his sales expectations for those ventures. *See* Doc. 108 at PAGEID 2896–2901, 2903–2904.

Prior to closing argument, the Court held as a matter of law that plaintiff had not proved any actual damages (in terms of lost future returns or sales from the business ventures), but that plaintiff could still seek damages for the reputational loss which is presumed in defamation *per se* cases. Doc. 107 at PAGEID 2803, 2813. During closing argument, plaintiff's counsel referred to plaintiff's loss of reputation among its 6,000 customers who "can no longer purchase engines from FCS." *Id.* at PAGEID 2828. But the evidence about the 6,000 customers was that they were buying what Mr. Wallake and his counsel called "parts" and "accessories," and not buying assembled, EPA-certified turnkey engines. Doc. 102 at PAGEID 1979; Doc. 107 at PAGEID 2794; Doc. 108 at PAGEID 2905–2906; *see also* Doc. 112 at PAGEID 3018–3019 (Court's decision granting a new trial on damages – discussing that there were only a handful, not 6,000, customers with whom plaintiff had been in contact about its plans for turnkey engines). The Court found no basis in the evidentiary record for why the presumption of harm to reputation applicable to plaintiff's turnkey engines

customers should extend to plaintiff's parts and accessories customers. Doc. 112 at PAGEID 3019. The Court held that counsel's reference to 6,000 customers was likely to prejudice the jury. *Id.* at PAGEID 3020–3022.

The second half of the litigation included reopened discovery and a new trial on damages. Plaintiff developed evidence that defendants' defamatory statements did in fact cause actual damages and reputational harm relating to a wider range of customers than just those whom plaintiff had targeted for its new business ventures. But to arrive there, plaintiff had to rework the "parts" versus "engines" distinction which it had created in the first trial. Plaintiff showed that, besides its plans for turnkey engines, it was doing a substantial business selling incomplete or unassembled engines and related parts. In essence, the unassembled engines were "parts" – a point not established during the first trial. Thus, it became clear that the proper distinction was not "engines" versus "parts" but rather plaintiff's new business ventures versus its established business of selling unassembled engines and other Ford components, accessories and parts.

Upon a thorough review of the record and consideration of the course of this litigation, the Court remains of the opinion that plaintiff's counsel's improper statements in the first trial were what caused the need for a retrial on damages. *Cf. Waldo v. Consumers Energy Co.*, 726 F.3d 802, 826 (6th Cir. 2013) (holding that a fee award should not be reduced if "the need for a second trial was not created by any unreasonable missteps by [plaintiff] or her attorneys"); *Abner v. Kansas City S. Ry. Co.*, 541 F.3d 372, 381–82 (5th Cir. 2008) ("[I]f the plaintiff's unreasonable behavior did not cause the first trial verdict to be vacated, a plaintiff may receive attorneys' fees for the expenses incurred during a trial that was later vacated."). In the first trial, plaintiff's case focused on the alleged damages resulting from plaintiff's lost business opportunities relating to wellhead gas engines. As a witness Mr. Wallake twice made references to "parts." Those references were difficult to make sense of and seemed irrelevant to plaintiff's case about lost business opportunities. *See* Doc. 102 at PAGEID 1979 ("And so I've got all this big building full of all these parts so what I did was we were setting up to have Northern Power, they already sell parts, take our inventory, put it on our inventory list and every day we just ship the parts that they say, hey, ship it to here or there."); Doc. 108 at PAGEID 2905–2906 ("I mean, there's – we had like 6,000 customers on our list that bought those parts, not just in Columbus, but from two years ago."). Though plaintiff proved in the second trial the relevance of the so-called "parts" business, plaintiff did not establish it in the first and counsel's statements during closing argument in the first trial were improper.

     **b.**       **Reducing the Hours**

       This leads to a subsequent issue – how should the fee award be reduced?  The Court will consider three possibilities.

       The first approach would be to subtract all fees relating to the retrial of damages, from after the end of the first trial through the completion of the second.  The reason for this approach would be that plaintiff's counsel's prejudicial statements were what made the second half of the litigation and the new trial on damages necessary.  This approach would result in excluding the hours expended from after the end of the first trial (December 17, 2019) through the end of the second trial (October 15, 2021).[1]  In this time frame, Mr. Krueger billed 257.4 hours, Ms. Cook billed 45.6 hours, and Mr. Dagon billed 209.4 hours.  They collectively billed 512.4 hours and $207,371.50 during this stage.

       A second approach would be to award fees for the portions of the case on which plaintiff prevailed: liability in the first trial and damages in the second trial.  The difficulty of this approach would be in separating out the portion on which plaintiff did not prevail – its damages theory from the first half of the litigation.  Looking at the billing entries from the start of the lawsuit through the end of the first trial, the Court would not be able with any certainty to differentiate the time spent on damages from the time spent on liability.

       The third approach is one suggested by plaintiff, who offers that the Court could subtract only the hours spent trying the damages stage of the first trial (from midday Thursday, December 12 through Monday, December 16, 2019).  This would yield a reduction of 103.6 hours and $38,786.00 in fees.  Plaintiff reasons that this discrete portion of the proceedings was rendered null by counsel's prejudicial statements.

       The Court declines to adopt plaintiff's approach because it fails to adequately reflect the impact which counsel's prejudicial statements had on the course of the litigation.  Those statements led to far more than a simple retrial on damages.  They led to a complete do-over of plaintiff's damages case – beginning with a significant amount of new discovery, carrying through with a new expert opinion, and culminating in a theory at trial which substantially differed from the first damages theory.  *See* Doc. 117 at pages 6–7 (status conference reflecting that the second half of the litigation would be "a brand new case . . . regarding the damage to the parts side of the business and start out with interrogatories and requests for production of documents and so forth and then

---

[1]   December 17, 2019 and October 15, 2021 were travel days home for plaintiff's counsel.  The Court will discuss below whether travel time should be included in the fee award calculation.

following up with depositions"). Thus, subtracting only the trial hours from the first damages trial would not reasonably account for the additional attorney hours expended as a result of counsel's prejudicial statements. *Cf. Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 742–43 (7th Cir. 2003) (where the first trial "was voided by [plaintiff's] unreasonable strategy," holding that it was appropriate to reduce the attorneys' fee award by only "the work performed by [her] attorneys during the first trial" because "the work done in preparation for" the first trial carried over to the re-trial).

In opposing a greater reduction in hours, plaintiff argues that a second trial on damages would have been necessary regardless of counsel's prejudicial statements. Plaintiff states that it intended itself to move for a new trial on damages on the grounds that it should have been permitted in the first trial to produce evidence of lost profits relating to the sale of unassembled engines and parts. This argument is unpersuasive because, as outlined above, plaintiff did not pursue such a theory of damages in the first trial and defendant had no notice of it. In any event, plaintiff chose not to file a motion for a new trial and thus plaintiff's argument is speculative.

Plaintiff's counsel further contends that the retrial on damages was successful and produced a better result for plaintiff than the first trial did. The Court agrees that the second trial was successful and could be viewed as a better result when considering that the punitive damages award in the first trial exceeded the allowable ratio under Ohio law of being twice the amount of compensatory damages awarded. *See* O.R.C. § 2315.21(D)(2)(a). Applying the cap, the damages award in the first trial would have been $150,000 in compensatory damages and $300,000 in punitive damages. In the second trial, the jury awarded $1 million in compensatory damages and $200,000 in punitive damages.

Plaintiff's counsel may be correct that their client obtained good value out of the second trial. But again, that only points to a failing on counsel's part. In the Court's frank opinion, plaintiff's damages theory in the first trial was far-fetched and it was poor judgment to pursue solely that theory at trial. The damages theory on which plaintiff prevailed in the second trial is the theory which plaintiff's counsel should have developed to start with and presented in the first trial.

This leads the Court to the question of whether the first or the second approach to reducing hours would better fit this case. Both approaches are justifiable. In favor of the first approach is the principle that the Court should exclude hours which were "unnecessary" and not "reasonably expended." *Hensley*, 461 U.S. at 434. The second half of the litigation would not have been necessary were it not for the prejudicial statements of plaintiff's counsel. Viewed another way, it

9

would be unfair to make defendants pay for plaintiff's counsel's mistake.  *See O'Rourke v. City of Providence*, 235 F.3d 713, 737 (1st Cir. 2001) ("The question is who should pay for the mistake, in the sense of bearing the costs of attorneys' fees for two trials.").

Applying the first approach, the Court would reduce the fee award by the number of hours spent on the second half of the litigation.  From the overall total of 1,676.7 hours sought by plaintiff, the Court would subtract the 512.4 hours expended from after the end of the first trial through the end of the second.  This would leave 1,164.3 hours, which can be separated into two categories: (1) 1,068.5 hours expended from the start of the case through the end of the first trial and (2) 95.8 hours expended on post-trial matters, including the present motions, occurring after the second trial.

In favor of the second approach is the purpose of a fee award.  A fee award under Ohio law is a form of compensation to the tort victim.  *See Zoppo*, 71 Ohio St. 3d at 558, 644 N.E.2d at 402. And generally a fee award serves the purpose of compensating a prevailing plaintiff for the fees "reasonably expended to achieve a positive result."  *Waldo*, 726 F.3d at 82; *see also Bittner v. Tri-Cnty. Toyota, Inc.*, 58 Ohio St. 3d 143, 145, 569 N.E.2d 464, 466–67 (1991) (holding that fees should be awarded "for the amount of time spent pursuing the claim for which fees may be awarded").  The positive result achieved in this case, as reflected in the Clerk's Judgment, is that defendants are liable to plaintiff (liability stage of the first trial) and that plaintiff suffered $1.2 million in damages, plus attorneys' fees (second trial on damages).  *See* Doc. 161.

The difficulty with the second approach is that the billing records do not allow for the Court to separate out the fees expended on plaintiff's failed damages theory in the first trial.  Nonetheless, the Court believes that the second approach, were it feasible to apply, would yield approximately the same result as the first.  Given the relatively straightforward nature of the liability case[2] and the relative complexity of plaintiff's first damages theory, the Court would expect that nearly half of the 1,068.5 hours expended in the first half of the litigation would have been on damages – which would be slightly over 500 hours.

Accordingly, the Court will apply the first approach because it provides certainty and serves as a reasonable proxy for the second approach.  Thus, the Court subtracts 512.4 hours from the fee award calculation.

---

[2]  Plaintiff's case boiled down to this: that defendants made false statements about plaintiff's noncompliance with EPA regulations and that those statements caused Ford Component Sales to terminate the Powertrain Sales Agreement with plaintiff.

### 2.    Reasonableness of the Hours Billed in the First Half of the Litigation

Plaintiff billed 1068.5 hours from the start of the case through the end of the first trial.  Mr. Krueger billed 502.5 hours, Ms. Cook 378.3 hours, Mr. Dagon 179.2 hours, and Mr. Walsh 8.5 hours.

This total number of hours strikes the Court as excessive for a case of this nature, particularly considering that plaintiff separately seeks an additional 270.6 hours expended by a paralegal and a litigation support manager during the first half of the litigation.

The Sixth Circuit has relieved district courts from acting as "green-eyeshade accountants" who attempt to "achieve auditing perfection."  *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  The district court may "simply do rough justice" based on its "overall sense" of the litigation.  *Id.*  Here, counsel's records contain 461 separate billing entries from the first half of the litigation (as well as 105 more entries for the paralegal and litigation support manager.

Travel is one category of hours which the Court can ascertain from the billing entries.  In the first half of the litigation, counsel expended 28.9 hours traveling between Cleveland and Columbus. Those hours were billed at the full hourly rate.  Mr. Kruger billed 19.0 hours traveling to meet with Mr. Wallake and to attend Mr. Wallake's deposition, the final pretrial conference and the first jury trial.  Ms. Cook and Mr. Dagon billed 5.1 hours and 4.8 hours respectively to travel for the first trial.

Whether to include travel time in a fee award falls "within the discretion given the district court." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991); *see also Disabled Patriots of Am., Inc. v. Beverly Terrace, Ltd.*, No. 1:06-CV-3063, 2008 WL 4426344, at *4 (N.D. Ohio Sept. 25, 2008).  Some courts allow travel expenses when "local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney who incurs costs traveling from home to the work site." *Anderson v. Wilson*, 357 F.Supp.2d 991, 1000 (E.D. Ky. 2005) (*quoting In re Segal*, 145 F.3d 1348, 1353 (D.C. Cir. 1998)) (internal quotation marks omitted).  Other courts start with a presumption against allowing travel time.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005), as amended (Nov. 10, 2005) ("[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time . . . .").

In the exercise of the Court's discretion, counsel's travel time will be disallowed. The Court believes that plaintiff could have found competent, skilled counsel in the central Ohio legal community to represent him, especially when plaintiff's counsel's firm, Benesch, Friedlander, Coplan & Aronoff LLP, has a Columbus office.  Therefore, the Court will reduce Mr. Krueger's hours by

19.0, Ms. Cook's by 5.1, and Mr. Dagon's by 4.8. This leaves 483.5 hours billed by Mr. Krueger, 373.2 hours billed by Ms. Cook, 174.4 hours billed by Mr. Dagon, and 8.5 hours billed by Mr. Walsh – for a total of 1,039.6 hours.

In evaluating the overall number of hours billed for the first half of the litigation, the Court finds it useful to compare those hours to the number of hours approved in fairly recent civil cases that went to trial before the Court. In *Hines v. DeWitt*, a five-day jury trial was held in a civil rights case involving multiple defendants and claims of excessive use of force by law enforcement officials. No. 2:13-cv-1058, 2016 WL 2342014 (S.D. Ohio May 4, 2016), *aff'd sub nom. Hines v. City of Columbus*, 676 Fed. App'x 546 (6th Cir. 2017). Counsel for the prevailing plaintiff requested 640 hours, and the Court allowed 502.5 hours. In *Corbin v. Steak n Shake, Inc.*, a five-day jury trial was held in a sexual harassment case brought against plaintiff's employer. No. 2:17-CV-1043, 2020 WL 1899124 (S.D. Ohio Apr. 17, 2020), *aff'd*, 861 Fed. App'x 639 (6th Cir. 2021). Counsel for the prevailing plaintiff requested 524.5 hours, and the Court allowed 300.6 hours, plus an additional 29.9 hours for law clerks at the firm.

To be sure, this case was more involved than those two cases. This case featured claims of defamation and tortious interference with a business relationship, required significant third party discovery and expert opinion, and culminated in a six-day trial. The Court would therefore expect plaintiff's counsel to be requesting somewhat more than the 640 hours requested in *Hines*.

Even so, the Court finds 1,039.6 hours to be excessive. Plaintiff's counsel acknowledges that they expended a significant number of hours and tries to explain that "Defendants' contentious defense resulted in extensive motion practice and discovery. . . . Defendants moved to dismiss, for summary judgment, for discovery sanctions, *in limine*, and for new trials." Doc. 173 at PAGEID 4438. The Court agrees that discovery required significant time and resources, as Mr. Krueger detailed in his declaration. Doc. 173-1 at ¶¶ 2–8. But plaintiff overplays the rest. The motion to dismiss prompted a mere two-page response from plaintiff, who stated that the filing of an amended complaint had made the motion moot. *See* Doc. 10. The Court excused plaintiff from responding to defendants' motion for sanctions under Fed. R. Civ. P. 11, which the Court summarily denied. *See* Docs. 41, 47. While the motion for summary judgment required a substantial response from plaintiff, it was typical for cases of this type. Likewise, the matters raised in defendants' motions *in limine* were not of extraordinary number or difficulty.

In reviewing the billing entries, the Court finds that much duplication occurred as a result of multiple attorneys working on the case. While "[m]ultiple-lawyer litigation is common and not

inherently unreasonable," a "district court should evaluate whether the case is 'overstaffed.'" *Ne. Ohio Coal.*, 831 F.3d at 704 (quoting *Hensley*, 461 U.S. at 434); *see also Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986) (noting that "multiple representation can be productive," but "there is also the danger of duplication, a waste of resources which is difficult to measure").

Perhaps the starkest example of overstaffing can found in the billing for the period of Saturday, December 7, 2019 through Monday, December 16, 2019. This period starts with the weekend immediately preceding the start of the first trial and runs through the completion of the first trial. Counsel collectively billed 273.3 hours over 10 days, not counting the hours billed for travel. Plaintiff, which was a small business run by a single proprietor, literally had an attorney on the clock for more than 24 hours per day – 273.3 hours over a 240-hour period. Counsel billed $102,125.00, or over $10,000 per day. And this was for litigation that, again, should not have been too complicated, but for plaintiff's rather convoluted first theory on damages.

To provide another example of excessive hours, plaintiff's counsel collectively spent 44.4 hours preparing for and attending the first final pretrial conference held in November 2019. Counsel billed $18,517.50 for these hours. Though the Court expects counsel to be prepared for a final pretrial conference, 44.4 hours is unreasonable for a case of this nature.

In reviewing the billing for other areas of the litigation, the Court finds that excessive billing pervades the records. This includes entries relating to discovery and entries marked "strategy," "preparation," and "analytical" or "analyzing." For instance, in the month before trial (from November 7 to December 6, 2019) Mr. Dagon expended 76.8 hours performing analytical reviews of materials and preparing for the first trial. In the same time frame, Mr. Krueger billed 141.2 hours and Ms. Cook billed 76.4 hours, excluding hours billed for the final pretrial conference.

The Court believes that an across-the-board percentage reduction in hours is the appropriate corrective measure for counsel's excessive billing and duplication of effort. *See Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), overruled on other grounds, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001); *Coulter*, 805 F.2d at 152 ("Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions . . . ."). In selecting a percentage, the Court notes that one as high as 75% is "exceptionally rare" and requires great justification. *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 Fed. App'x 597, 604 (6th Cir. 2014). The Sixth Circuit has upheld reductions of 10% to 50% where the district court explains the basis for the reduction, such as excessive or duplicative billing, lack of documentation, or low degree of success, among other considerations. *See, e.g., Kentucky Rest. Concepts Inc. v. City of Louisville*, 117

Fed. App'x 415, 419 (6th Cir. 2004) (affirming 10% reduction for duplication); *Hudson*, 130 F.3d at 1209 (25% reduction for duplication); *Farmer v. Ottawa County*, 2000 WL 420698 at * 7 (6th Cir. April 13, 2000) (33% reduction for "limited nature of Plaintiff's success"); *Richard v. Caliber Home Loans, Inc.*, 832 Fed. App'x 940, 948 (6th Cir. 2020) (50% reduction for billing deficiencies); *Coulter*, 805 F.2d at 152 (50% reduction for duplication).

Upon consideration of the excessive hours billed and the duplication of effort, tempered by the high degree of success achieved by plaintiff's counsel, the Court concludes that a one-third reduction of hours billed from the start of the case through the end of the first trial is appropriate. After travel hours are subtracted, applying a one-third deduction results in the following: 322.3 hours allowed for Mr. Krueger, 248.8 hours allowed for Ms. Cook, 116.3 hours allowed for Mr. Dagon, and 5.7 hours allowed for Mr. Walsh.

The total hours allowed for the liability and damages stages of the litigation are 693.1.

### 3.    Reasonableness of the Hours Billed After the Second Trial

Plaintiff's counsel billed an additional 95.8 hours on post-trial matters after the second trial. These matters included preparing the motions for an award of costs and post-judgment interest (12.7 hours) and for an award of attorneys' fees (18.6 hours), as well as opposing defendants' motion for a directed verdict or new trial (53.4 hours) and other miscellaneous matters, such as post-trial strategy and settlement efforts (11.1 hours).

Here too the Court finds duplication of effort and excessive hours billed.  In the Court's experience, the combined 31.3 hours expended on plaintiff's two motions is somewhat high, and the Court will reduce those hours by one-third, which results in allowance of 20.9 hours.  The time spent opposing defendant's motion and on miscellaneous matters, 64.5 hours, is extremely high, and the Court will reduce those hours by one-half, which results in an allowance of 32.3 hours.  Broken down by attorney, 20.4 hours are allowed for Mr. Krueger, 2.8 hours allowed for Ms. Cook, and 30.0 hours allowed for Mr. Dagon.

The total hours allowed for after the second trial are 53.2 hours.

### D.    Reasonable Hourly Rates

In May 2018, when plaintiff filed the case, Mr. Krueger was a partner who had 8 years of experience as an attorney and billed at a rate of $325 per hour.  In May 2019, his rate increased to $415 per hour, and it increased to $465 per hour in October 2019, two months before the first trial. Mr. Krueger billed $510 per hour beginning in February 2021 and that rate has held constant through the second trial and the present motions filed in April 2022.

At the start of this case, Ms. Cook had 7 years of experience and billed at an hourly rate of $325.  Her rate increased to $350 per hour in May 2019 and to $375 per hour in October 2019.  In January 2021, her hourly rate increased to $405, where it has held constant through the filing of the present motions.

Mr. Dagon had 1 year of experience when he began working on this case in November 2019, and he billed $290 per hour.  His rate increased to $315 in February 2021, and it has held constant though the filing of the present motions.

Mr. Walsh had less than six months of experience when he briefly worked on the case in 2018.  He billed at a rate of $325 per hour.

"A trial court, in calculating the reasonable hourly rate component of the lodestar computation, should initially assess the prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (internal quotation marks and emphasis omitted).  The court looks to the rate "which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court." *Id.*

In the motion for attorneys' fees, plaintiff seeks an average hourly rate of $435 for Mr. Krueger, $355 for Ms. Cook, $299 for Mr. Dagon, and $325 for Mr. Walsh.  In support of their rate requests, plaintiff's counsel have submitted the expert report of Jonathan Coughlan, an attorney in Ohio since 1978.  Mr. Coughlan's career has focused on professional responsibility, including a 16-year period in which he served as Disciplinary Counsel of the Supreme Court of Ohio.  Mr. Coughlan's report opines that the rates sought by counsel are reasonable.  His opinion is based on his consideration of the skill and experience of counsel, the complexity of the case, the results achieved, case law on fee disputes, the Ohio State Bar Association's 2019 Report entitled The Economics of Law Practice in Ohio, a resource called the Rubin Report, and Mr. Coughlan's own familiarity with the hourly rates charged by central Ohio law firms.

The Court finds Mr. Coughlan's report to be insightful, but he did not have the benefit of knowing that the Court would exclude counsel's hours from after the end of the first trial through the conclusion of the second trial.  Therefore, the Court rejects plaintiff's proposal that the Court apply a blended or average rate for the entire span of the litigation.

In setting a reasonable rate for the first half of the litigation, the Court finds the Ohio State Bar Association's 2019 Report to be a particularly useful resource.  Not only has the Court relied on it in past cases, *see, e.g.*, *Corbin*, 2020 WL 1899124, at *2; *Hines v. DeWitt*, 2016 WL 2342014 at *3, but it was published in the same year as the first trial.  According to the OSBA Report, the median

hourly rate in Ohio for attorneys with 1 to 2 years of experience is $165; 3 to 5 years of experience is $200; 6 to 10 years of experience is $215; and 11 to 15 years of experience is $250.  *See* OSBA Report, Ex. 47.  Median hourly rates for firms the size of Benesch Friedlander (a mid-sized Columbus office and a larger Cleveland office) range from $250 to $350.  *Id.*  Rates for downtown Columbus range from $50 to $100 greater than rates outside the downtowns of Ohio's three largest cities.  *Id.*  Rates for commercial litigation and trial practice tend to run slightly above average.  *Id.*, Ex. 48.

Upon consideration of the OSBA Report, Mr. Coughlan's report and the factors identified therein, and the Court's own familiarity with local hourly rates in handling fee disputes, the Court reaches the following determinations:

- for Mr. Krueger, a partner who had 8 to 10 years of experience from the time the case was filed through the end of the first trial, $350 is a reasonable average hourly rate for the first half of the litigation.  A reasonable hourly rate for work performed after the second trial, when Mr. Krueger had 12 years of experience, is $400;

- for Ms. Cook, an associate who had 7 to 9 years of experience from the time the case was filed through the end of the first trial, $325 is a reasonable average hourly rate for the first half of the litigation.  A reasonable hourly rate for work performed after the second trial, when Ms. Cook had 11 years of experience, is $375;

- for Mr. Dagon, a junior associate who had 1 year of experience when he began working on the case shortly before the first trial, $225 is a reasonable hourly rate for the first half of the litigation.  A reasonable hourly rate for work performed after the second trial, when Mr. Dagon had 3 years of experience, is $250; and

- for Mr. Walsh, a junior associate with less than six months of experience, a reasonable hourly rate is $200.

### E. Calculation of Approved Attorneys' Fees

Applying the approved rates to the allowed hours yields a lodestar amount of $237,682.50, as detailed below.

| Attorney | 1st Half Hours Allowed | 1st Half Rate | 1st Half Subtotal | Post-2nd Trial Hours Allowed | Post-2nd Trial Rate | Post-2nd Trial Subtotal | Total Allowed Fee |
|---|---|---|---|---|---|---|---|
| David Krueger | 322.3 | $350 | $112,805.00 | 20.4 | $400 | $8,160.00 | **$120,965.00** |
| Nora Cook | 248.8 | $325 | $80,860.00 | 2.8 | $375 | $1,050.00 | **$81,910.00** |
| John Dagon | 116.3 | $225 | $26,167.50 | 30.0 | $250 | $7,500.00 | **$33,667.50** |
| James Walsh | 5.7 | $200 | $1,140.00 | 0 | - | - | **$1,140.00** |
| **TOTAL** | 693.1 | - | $220,972.50 | 53.2 | - | $16,710.00 | **$237,682.50** |

In the Court's view, the lodestar amount of $237,682.50 is sufficient "to attract competent counsel yet [ ] avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349. The Court finds no reason to adjust the lodestar upward or downward through application of the *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Adcock-Ladd*, 227 F.3d at 349.

### F. Support Staff Fees

Plaintiff also seeks an award of fees associated with the law firm's paralegal and litigation support manager. The paralegal billed 218.6 hours during the first half of the litigation and zero hours after the second trial. The litigation support manager billed 52 hours during the first half of the litigation and zero hours after the second trial. Plaintiff seeks an hourly rate of $200 for the paralegal and $150 for the litigation support manager.

17

###### 1.      Paralegal

"Fees for paralegal services are recoverable, as the term 'attorney fees' embraces fees of paralegals as well as attorneys"  *Howe v. City of Akron*, No. 5:06-CV-2779, 2016 WL 916701, at *15 (N.D. Ohio Mar. 10, 2016), *aff'd*, 705 Fed. App'x 376 (6th Cir. 2017) (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008)).  *See also Hamilton v. Ball*, 2014-Ohio-1118, ¶ 81, 7 N.E.3d 1241, 1263 (Ohio Ct. App.) ("[F]ees at a lower rate may be recovered for work done by law clerks, legal interns, and paralegals."); *Specht v. Finnegan*, 2002-Ohio-4660, ¶ 44, 776 N.E.2d 564, 571 (Ohio Ct. App.) ("Paralegal fees are compensable as an element of attorney fees").

A court should distinguish between legal work and non-legal work performed by paralegals or other support staff.  "[A]ctivities such as filing a complaint, filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently 'legal work' to permit compensation, although any compensation would be at a lesser rate.  *Rodriguez v. Astrue*, No. 3:11CV398, 2012 WL 2905928, at *3 (N.D. Ohio July 16, 2012) (citing cases).  By contrast, "[p]urely clerical or secretarial tasks, that is, *non-legal* work, should not be billed – even at a paralegal rate – regardless of who performs the work."  *Id.* (emphasis in original) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989)).

Upon review of the time entries of the paralegal, the Court finds that she performed sufficiently legal work to qualify for the fee award.  For instance, she prepared the service of summons, subpoenas, and trial exhibits.  However, the Court will subtract her round-trip travel time to Columbus for the first trial (3.5 hours) for the same reason the Court has excluded counsel's travel time.  Further, the Court finds that the total paralegal hours is excessive.  For instance, she billed 107.9 hours in the course of the first trial (which, including weekends, ran from December 7 to 16, 2019), including for attending the trial.  Plaintiff's counsel billed 273.3 hours in the same time frame.

The Court will reduce the paralegal hours by one-third, which yields 143.4 hours allowed.

Plaintiff asserts that $200 is a reasonable hourly rate for the paralegal work, largely because she has 38 years of experience.  However, even the expert report of Mr. Coughlan concedes that one of his calculations results in $155 per hour as being a reasonable rate for a paralegal.  *See* Doc. 173-2 at PAGEID 4479.

The Court finds that a lower rate is appropriate.  As was recently held by another judge of this Court:

The reasonable rate for paralegals in this district is between $100 and $130 per hour. *See e.g., Leonard v. John Doe Corp.*, No. 2:19-cv-2142, 2020 WL 3642562, at *3 (S.D. Ohio July 6, 2020) (awarding a rate of $130 per hour for paralegals); *Fuller v. Lakeshore Financial LLC*, No. 2:18-cv-1722, 2019 WL 5862811, at *2 (S.D. Ohio Nov. 8, 2019) (awarding a rate of $100 per hour for paralegals and summer associates); *Miller v. Ability Recovery Servs., LLC*, No. 1:18-cv-266, 2019 WL 1227777, at *5 (S.D. Ohio Mar. 15, 2019) (awarding a rate of $100 per hour for paralegals). Based on the prevailing market rates, the Court finds that $130 is a reasonable fee for Plaintiff's paralegal work.

*Rash v. Mercantile Adjustment Bureau, LLC*, No. 2:20-CV-5045, 2022 WL 1637674, at *2 (S.D. Ohio May 24, 2022) (Sargus, J.).

Accordingly, the Court will apply an hourly rate of $130 to the paralegal's 143.4 hours, which equals $18,642.00.

### 2.    Litigation Support Manager

Plaintiff's materials do not explain what role the firm's litigation support manager performed. The billing entries make clear that he performed services related to electronic document and database reviews. The services included collecting and processing client emails, scanning and importing documents into a database, and executing searches of the database.

The services provided by the litigation support manager are no doubt essential to conducting electronic discovery. But plaintiff has provided the Court with no grounds on which to find that the particular services provided here constituted legal work. The Court thus will disallow the hours of the litigation support manager. *See Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, No. 115CV01136DADEPG, 2019 WL 2725336, at *8 n.8 (E.D. Cal. July 1, 2019) (excluding work performed by litigation support staff, who "prepared electronic document databases for review," because it "constitutes nonlegal clerical work that is not compensable as attorneys' fees"); *Genesis Merch. Partners, LP v. Nery's USA, Inc.*, No. 11-CV-1589 JM (WVG), 2013 WL 12094825, at *11 (S.D. Cal. Dec. 6, 2013) (denying fees associated with a "litigation support vendor").

### G.    Expert Witness Fees

Plaintiff seeks an award of fees for its damages expert, Glenn Sheets, in the amount of $76,572.50. Plaintiff also seeks an award of fees for Mr. Coughlan, its attorneys' fees expert, in the amount of $7,947.50.

A federal court ordinarily excludes expert witness fees from a fees or costs award. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (requiring "explicit statutory

authority" in order to shift expert witness fees); *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007).

Plaintiff argues that Ohio law allows for expert fees to be included in an attorneys' fees award in situations, like the one here, where there is a predicate finding that punitive damages and attorneys' fees should be awarded to a prevailing plaintiff. Plaintiff cites two cases, both of which support plaintiff's argument. In *Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, ¶ 176, 75 N.E.3d 692, 736 (Ohio Ct. App., 7th Dist.), the court held that "litigation expenses in the form of expert witness fees can be considered by the trial court when calculating attorneys' fees due to the prior finding that punitive damages and attorneys' fees were warranted." The court reasoned that at common law trial courts had the "historic authority" to award "litigation expenses" when an award of punitive damages was made. *Id.* at ¶ 175. And courts held that "expert witness fees and attorney fees are both considered litigation expenses."[3]  *Id.* at ¶ 172 (citing cases). The same Ohio Court of Appeals reaffirmed the *Premier Therapy* decision in a second case. *See Spires v. Oxford Mining Co.*, LLC, 2018-Ohio-2769, ¶ 52, 116 N.E.3d 717, 728 (Ohio Ct. App., 7th Dist.).

The Court will allow expert witness fees to be included in the fee award. The development of expert evidence was reasonable and necessary to plaintiff proving its case. Mr. Sheets' testimony in the second trial played a critical role in providing the jury with a framework by which to determine actual damages. Indeed the jury awarded lost profits in an exact amount calculated by Mr. Sheets. *See* Oct. 7, 2020 Sheets Report at p. 10. With respect to Mr. Coughlan, the Court finds that his report is useful in evaluating the reasonableness of the rates of plaintiff's counsel and paralegal.

The Court, however, finds that the fee amount requested for Mr. Sheets' expert services is unreasonable. Mr. Sheets billed a total of 211.5 hours for his services in connection with the second

---

[3]  Returning to the litigation support manager, one could argue that his fees are a litigation expense. But the holding in *Premier Therapy* was limited to an award of expert witness fees. Further, the discussion in *Premier Therapy* makes clear that the trial court retains discretion over whether to award litigation expenses and is not required to do so. *See* 2016-Ohio-7934, ¶¶ 175–76 (stating that the trial court "is permitted to" and "can" consider litigation expenses). Even if Ohio law permits a trial court to include expenses for a litigation support manger in the fee award, the Court declines to do so here. In the Court's view, the distinction between legal work and non-legal work should still be given great weight, and plaintiff has not shown that the litigation support manager performed legal work. And, unlike an expert, he did not provide evidence which advanced plaintiff's legal positions.

trial on damages.[4]  The Court views this as unreasonably excessive.  Mr. Sheets served as an expert in the first half of the litigation and should have already gained some familiarity with plaintiff's business and financials.  His report and damages model of lost profits in the second trial was conventional and straightforward and should not have taken such a large amount of time to complete.  Six different individuals from Mr. Sheets' firm billed on the matter, and this likely led to duplication of effort.

The Court will reduce the fee for Mr. Sheets by one-half, resulting in an expert witness fee award of $38,286.25.

Turning to Mr. Coughlan, the Court finds that his fee of $7,947.50 is reasonable and thus it is allowed.

### H.    Summary

The total fee award is $302,558.25, and is comprised of the following fees:

- Legal counsel – $237,682.50

- Paralegal – $18,642.00

- Expert Mr. Sheets – $38,286.25

- Expert Mr. Coughlan – $7,947.50

## IV.    Conclusion

Plaintiff's motion for costs and post-judgment interest (doc. 172) is GRANTED.  Plaintiff's motion for attorneys' fees (doc. 173) is GRANTED, but in an amount less than what plaintiff requested.

Accordingly, plaintiff is awarded $12,329.52 in costs and $302,588.25 in attorneys' fees and expert witness fees.  Plaintiff is further awarded post-judgment interest, to be calculated by the Clerk of Court, on the amount of $1,502,588.25 (which is the sum of the damages award of $1,200,000 and fees award of $302,588.25).

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE September 19, 2022

---

[4]  The Court excluded the damages opinion of Mr. Sheets during the first trial.  *See* Doc. 92. Plaintiff's fee request excludes all expert fees associated with the first trial.  The Court finds that it is appropriate to award expert fees for the second trial on damages, in which plaintiff prevailed.